**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

DONALD BEST,                                                                      PLAINTIFF
ADC #151745

v.                                       5:19CV00224-JM-JTK

BRENT COX, et al.                                                         DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr.   Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.      Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.        The detail of any testimony desired to be introduced at the hearing before the

1

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## I.    Introduction

Plaintiff Donald Best, a state inmate incarcerated at the Pine Bluff Unit of the Arkansas Division of Correction (ADC), filed this pro se action pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), while he was incarcerated at the Greene County Jail in April and May 2019. (Doc. No. 8)

This matter is before the Court on the parties' Motions for Summary Judgment (Doc. Nos. 25, 29, 39). Defendants filed a Response to Plaintiff's Motion (Doc. No. 32) and Plaintiff filed a Response to Defendants' Motion (Doc. No. 40). Defendants then filed a Reply (Doc. No. 44)

## II.    Amended Complaint (Doc. No. 8)

Plaintiff alleged that after he was convicted in Faulkner County Circuit Court he was transported to the Greene County Detention Center (Jail) to await transport to the ADC. During his booking at the Jail, Defendant Hunt confiscated his Quran and other property pursuant to Defendant Cox's orders. Cox stated that prisoners were permitted to keep the Bible for religious

purposes but denied Plaintiff the right to study the religion of his choice. Although Plaintiff requested the return of his Quran, he did not receive it until April 25, 2019. On that date, Defendant Harris told Plaintiff, in a threatening and intimidating posture, that he was not to bother the staff any more about the Quran issue. Defendants Cox and Crittendon took no action in response to Plaintiff's grievances. Later, Plaintiff was placed in a lock-down status with the implication that force would be used if he continued to pursue his religious rights. This intimidation and fears of retaliation placed him in a stressful and unhealthy situation. Finally, upon his transfer from the Greene County Jail to the ADC, he was required to wear handcuffs, shackles, and waist/belly chains while other transferring inmates were required to wear only handcuffs. Plaintiff also was denied his personal and legal mail.

## III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.    See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).    "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).    "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.    Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine

dispute over those facts that could actually affect the outcome of the lawsuit." Id.

    **A.    First Amendment Claim**

Although Plaintiff sued the Defendants in both their official and individual capacities, the Court initially finds that his constitutional monetary claims against them in their official capacities should be dismissed. A suit against a county official in his or her official capacity is the equivalent of a suit against the county itself. Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998).   In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions.   Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990).   In addition, Defendants cannot be liable for money damages in their official capacities because Plaintiff did not allege a valid claim against their employer, Greene County. Johnson v. Blaukat, 453 F.3d 1008, 1114, (8th Cir. 2006). In this case, Plaintiff did not allege an improper or unconstitutional policy, but rather, that Defendants failed to properly follow policies.   Therefore, the monetary claims against Defendants in their official capacities with respect to this claim should be dismissed.

Defendants also ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner.   It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   Qualified immunity is a question of law, not a question of fact.   McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).   Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an

*immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.    Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1]    Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

According to the Affidavit of Jail Administrator Brent Cox, Plaintiff was booked into the Jail on April 12, 2019, and transferred to the ADC on May 7, 2019. (Doc. No. 30-1, p. 1) Best arrived at the Jail with a book (Quran), envelopes with stamps, and printed letters from his family, all of which was logged and stored pursuant to Jail policy. (Id., p. 2) On April 16, 2019, Plaintiff submitted a kiosk request for access to his Quran, and was told that his request would be relayed to the Chaplain, who could provide him with such. (Id.) Plaintiff submitted another kiosk request on April 23, 2019, and filed a grievance on April 25, 2019, both complaining that he had not received the Quran. (Id.) He received it on April 25, 2019. (Id.) According to Cox, Crittenden's first involvement with this issue was when he responded to the grievance on April 26, 2019, which occurred **after** Plaintiff received the Quran from Defendant Harris. (Id.) Defendant Hunt's only

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

involvement occurred when he stored and logged the property on April 12, 2019, and although Plaintiff claims that Hunt told him the Quran was not considered a religious book, it is a religious text and the Jail does allow inmates access to a Quran if it is available. (Id.) Defendant Harris's only involvement was to provide the Quran to Plaintiff on April 25, 2019. (Id., p. 3)

Defendant Crittenden is the Assistant Jail Administrator for the Detention Center, responsible for training and supervising jail staff and assisting the Administrator with daily operation and management of the Jail. (Doc. No. 30-2) He first became aware of Plaintiff's request for the Quran when he reviewed Plaintiff's April 25, 2019 grievance, and when he spoke with staff about the issue he learned that Harris returned the Quran to Plaintiff on April 25, 2019. (Id., p. 2)

Defendants also presented copies of Plaintiff's kiosk requests and grievances. On April 16, 2020, Plaintiff requested his Quran, and a non-party responded on that same day that he would ask the Imam to send one to Plaintiff. (Doc. No. 30-1, p. 15) Plaintiff submitted a second request on April 23, 2019 (Id., p. 17), and then filed a grievance on April 25, 2019, also complaining about harassment by the "Sgt." (Id., p. 19) On April 26, 2019, Plaintiff filed another request, noting that he received his Quran, but complained that it was damaged and that he had been discriminated. (Id., p. 20) He complained again about the delay and religious discrimination in a request filed April 27, 2019, and filed a grievance about Harris's harassment and threats on May 3, 2019 (Id., p. 22) On May 4, 2019, Plaintiff complained Harris discriminated against black inmates because he disallowed them to braid each other's hair, yet allowed Caucasian inmates to skin each other's head. (Id., p. 25)

In his Motion and Response to Defendants' Motion, Plaintiff states that Defendants denied him access to his Quran, which placed a substantial burden on him without compelling justification. He requested assistance from the chaplain for his Quran and was denied. He

complained to the Administrator about an officer who told him the Quran is not a religious book and when Defendant Harris returned the Quran it was rolled up with water damage. He claimed in his motion that while his Quran was confiscated, other detainees were able to keep their Bible,[2] and that upon his transfer to the ADC, Defendants destroyed his personal and legal mail.

Prisoners retain First Amendment freedoms which are not inconsistent with their status or with legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974). When analyzing a First Amendment challenge, courts are more deferential to prison officials than when analyzing a claim filed pursuant to the RLUIPA. See Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 832-33 (8th Cir. 2009). "'A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'" Murphy, 372 F.3d at 982 (quoting Turner v. Safley, 482 US. 78, 89 (1987)). To support his First Amendment claim, Plaintiff must show Defendants placed a substantial burden on his ability to practice his religion. Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008) A substantial burden means that the regulation "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." Id.(quoting Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004)) In McCroy v. Douglas County Corrections Center, the United States Court of Appeals, Eighth Circuit, held that the confiscation of a prayer rug and copy of the "Koran," which were not returned to the inmate for two weeks, did not rise to the level of a constitutional

---

[2] Plaintiff did not allege this in his Amended Complaint.

violation, citing Patel, supra. 394 Fed.Appx. 325, 326 (8th Cir. 2010) (unpublished ).In addition, an inmate who was denied a copy of his personal Bible for one week did not state a constitutional claim for relief in Masek v. Chastain, No. 4:17-CV-660 CAS, 2018 WL 4144792, at *7 (E.D.Mo. 2018). See also Johnson v. Fields, No. 2:14-CV-38-FDW, 2017 WL 5505991, at *13 (W.D.N.C. Nov. 16, 2017) (where the removal of the Bible for twenty-four days did not substantially burden the plaintiff's exercise of his religion.)

In this case, Plaintiff claimed that when Hunt initially confiscated his Quran, he told him it was not considered a religious book at the Jail. (See Doc. No. 30-1 p. 9, where the Quran is identified on the property intake sheet as a "book.") Both Defendants Cox and Crittenden refute Hunt's statement, stating that the Quran is a religious text and inmates are permitted to have access to a Quran if it is available. (Doc. Nos. 30-2, 30-3) Regardless, when Plaintiff requested a copy of the Quran the very next day, a non-party responded that his request would be relayed to the Chaplain. (Doc. No. 30-1, p. 15) Plaintiff did not submit another request for his Quran until April 23, 2019 (Id., p. 17), and it was returned to him two days later, on April 25, 2019. (Id., p. 20) Plaintiff did not allege that during his time without the book, Defendants prevented him from praying or otherwise practicing his religion, and did not provide evidence that Defendants otherwise "meaningfully curtail[ed] [his] ability to express adherence" to his faith. Murphy, 372 F.3d at 988. Therefore, the Court finds Plaintiff fails to support a constitutional claim for relief, that Defendants acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts as alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

### B.    RLUIPA Claim

Plaintiff also claims Defendants' actions in depriving him of the Quran violated RLUIPA. Initially, the Court notes that RLUIPA does not permit actions against governmental employees in their individual capacities. Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012). And, as noted above, official capacity actions against County employees are considered actions against the County. Flores v. United States, 689 F.3d 894, 899 n. 4 (8th Cir. 2012). County liability attaches only when/if Plaintiff alleged an unconstitutional policy or practice, which is not the case here. RLUIPA also provides for only injunctive relief in official capacity claims. See Van Wyhe v. Reisch, 581 F.3d 639, 655 (8th Cir. 2009). In this case, Plaintiff requested "that discrimination will stop in Greene County Jail." (Doc. No. 8 p. 7)   However, Plaintiff did not claim the denial of his Quran was the result of an unconstitutional policy or practice, but rather, that Defendants violated the policy in effect. Therefore, the Court finds this claim should be dismissed as a matter of law.

### C.    Restraints

Plaintiff alleged in his Amended Complaint and Summary Judgment Response, that when he was transferred from the Jail to the ADC he was required to wear handcuffs, shackles, and waist/belly chain restraints, but that other inmates only wore handcuffs. According to both Crittenden and Cox, the Jail Administrator establishes specific policies regarding inmate restraints. (Doc. Nos. 30-1, pp. 3, 45; Doc. No. 30-2) During April and May of 2019, that policy provided that all inmates transported from the Jail to the ADC were to be fully restrained with leg shackles, belly chains and handcuffs during transport. (Id.) During his transport on May 7, 2019, Defendants state Plaintiff was restrained exactly as all Jail inmates are required to be restrained during transport to the ADC. (Doc. Nos. 30-2, 30-3)

To support an Eighth Amendment claim against Defendants, Plaintiff must allege and prove that Defendants denied him the "'minimal civilized measure of life's necessities' such that the conditions of incarceration pose a 'substantial risk of serious harm.'" Sullivan v. Burd, No. 4:18-CV-1578 ACL, 2020 WL 1188353, p. *2 (E.D. MO 2020) (quoting Farmer v. Brennan, 522 U.S. 825, 834 (1994) (other citations omitted). The court in Sullivan also noted that courts have found that the use of black box restraints does not violate the Eighth Amendment, citing Fulford v. King, 692 F.2d 11, 14 (5th Cir. 1982).[3]

In this case, Plaintiff did not allege harm caused by the restraints, the length of time he was restrained or any other conditions during his transport, or that the other inmates who merely were handcuffed were transported to the ADC. The Court therefore finds as a matter of law that Plaintiff fails to support a constitutional claim for relief, that Defendants acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts as alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

### D.    Miscellaneous Claims

Plaintiff alleged racial discrimination in his Amended Complaint, but did not allege any specific instances of discriminatory conduct by any of the Defendants. In his Response to Defendants' Motion, he appears to base his claim on a statement that Defendant Hunt stated on his booking statement that Best was a Caucasian male. Although the Booking Sheet listed Plaintiff's race as "Caucasian-light skin tone" (Doc. No. 30-1, p. 5), another part of the record listed

---

[3] As noted in Sullivan at n. 2, black box restraints were described by one court as "a rectangular device measuring approximately four inches by three inches" that "[w]hen placed over the chain of a pair of handcuffs, it both limits a prisoner's ability to move his hands, and prevents access to the handcuff's keyholes." Davis v. Peters, 566 F.supp.2d 790, 798 (N.D.Ill. 2008)

Plaintiff's race as "B." (Id., p. 11) The Inmate Release Report also listed Plaintiff as "Caucasian." (Id., p. 12) All three reports, however, contain photographs of Plaintiff which clearly show that Plaintiff is not Caucasian. Regardless, Plaintiff did not allege any specific instances of racial discrimination by Defendants, or that he was treated dissimilarly from other similarly-situated people. Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994). Therefore, the Court finds as a matter of law that Plaintiff did not state a constitutional claim of racial discrimination.

Plaintiff claimed Defendants placed him in lockdown "and it was implied that the use of force, extreme force if necessary, if the plaintiff continued his pursuit of religious freedoms." (Doc. No. 8, p. 7) He also alleged that Harris, in "a threatening and intimidating posture and an even more aggressive and demeaning tone," warned Plaintiff not to bother the staff further about the Quran incident. (Id.) In his Statement of Facts, he stated that he was locked down for seven days by Defendant Harris "on April 31, 2019…for using offensive language on the emergency speaker." (Doc. No. 41, p. 3) However, he did not deny that he used offensive language on the emergency speaker. The Court finds that these allegations fail to support a constitutional claim for relief. (Id., p. 11)  "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim."  King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir. 1997) (quoting Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992)).   In addition, the "constitution does not protect against all intrusions on one's peace of mind.   Fear of emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." King, 117 F.3d at 1067, (quoting Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991)).

Finally, any claim related to the destruction of his property after his transfer to the ADC also must fail. First, the Jail policy provided that upon transfer, an inmate could designate a person

to retrieve the inmate's property. (Doc. No. 30-1, p. 13) Plaintiff provided the name and address for an individual he designated to retrieve his property, but when that person did not do so, the property was destroyed. (Id., p. 13) Second, when a state actor deprives an individual of personal property, the individual does not have a § 1983 claim if state law provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 530-537 (1984). In Arkansas, the action of conversion is a common law tort action for the wrongful possession or disposition of someone's property. McQuillian v. Mercedes-Benz Credit Corp., 331 Ark. 242, 247 (Ark. 1998). See also Scott v. Boyd, No. 3:08cv00136WRW, 2008 WL 4874058 (E.D.Ark. 2008), where the plaintiff inmate sued defendants for damages in a § 1983 action, for property that was lost or stolen while he was incarcerated at the Crittenden County Jail. In this case, Plaintiff did not allege in his Complaint that he utilized the post-deprivation remedy and therefore, the Court finds this claim should be dismissed.

IV.    **Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 29) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

2.    Plaintiff's Motions for Summary Judgment (Doc. Nos. 25, 39) be DENIED.

3.    Plaintiff's Motion for Video (Doc. No. 38) be DENIED as moot.[4]

IT IS SO RECOMMENDED this 21st day of October, 2020.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

[4] On October 5, 2020, Plaintiff filed this motion for video of the date he was transferred from the Jail to the ADC, as relevant to his restraints claim. The discovery deadline expired June 18, 2020. (Doc. No. 17)